UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JENNIFER NOAMI ORTEGA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 19-cv-03242-RMI<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 22, 23 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for supplemental security income under Title XVI of the Social Security Act. On September 27, 2013, Plaintiff filed her application for benefits alleging an onset date of January 1, 1996. *See* Administrative Record ("*AR*") at 407-17.[1] Initially, Plaintiff's application was granted by an ALJ in September of 2016, but the Appeals Council remanded her case stating that it was not supported by substantial evidence. *Id*. at 28. On remand, the ALJ denied her application on March 9, 2018. *Id.* at 54. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council on April 9, 2019 (*id*. at 1-4), and thus, the ALJ's decision became the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 6, 14), and both parties have moved for summary judgment (dkts. 22, 23). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #18. *See* (dkts. 18-1 through 18-21).

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

On September 20, 2016, Plaintiff received a favorable disability decision finding that her seizure disorder met or medically equaled neurological listings 11.02 and 11.03. *AR* at 169-72. However, on February 1, 2017, the Appeals Council vacated the decision finding that the ALJ's opinion did not fully consider the medical evidence of noncompliance with prescribed treatment and both listings 11.02 and 11.03 require that, to be disabling, a claimant's seizures must occur at the specified frequency despite three months of prescribed treatment.[2] *Id*. at 175-76. The Council took issue with the ALJ's assignment of great weight to the opinion of Stephen Genest, M.D., whose response to medical interrogatories did not discuss medication noncompliance, and it stated that, contrary to the ALJ's conclusion, no medical source suggested that Plaintiff's condition would not improve with medication compliance. *Id*. at 176. Accordingly, the Appeals Council remanded the matter with instructions to: obtain "updated evidence from [] treating sources . . .

---

[2] The Appeals Council wrote "[o]ur rules and regulations instruct that if treatment prescribed by a physician can restore your ability to work, but you do not follow the prescribed treatment without a good reason, we will not find you disabled." *AR* at 176 (citing 20 C.F.R. § 416.930 and Social Security Ruling 82-59).

and an updated consultative examination(s) if further warranted, with medical source statements about what the claimant can still do despite the impairments;" to further evaluate the consistency of Plaintiff's statements regarding symptoms and medication compliance; and to consult a medical expert to clarify the nature, severity, and limiting effects of Plaintiff's seizures and the impact that medication noncompliance has, if any, on Plaintiff's seizures and related limitations. *Id*. at 178. If the claim proceeded beyond Step Three, the ALJ was to evaluate the residual function capacity ("RFC") and obtain the opinion of a Vocational Expert ("VE"). *Id*. Finally, if the ALJ once again found Plaintiff to be disabled, the ALJ was to evaluate the issue of medication noncompliance according to the applicable rules and regulations. *Id*. at 31.

## SUMMARY OF THE RELEVANT EVIDENCE

On October 4, 2017, the ALJ held a supplemental hearing pursuant to the Appeals Council's mandate. *Id*. at 112-31. First, the medical expert, Dr. Orth, testified that Plaintiff had a seizure disorder. *Id*. at 118. He then stated that "[t]he records, however, show she's fairly non-compliant with seizure medication." *Id*. Next, Dr. Orth recited Plaintiff's most recent medical records from 2016 and 2017. *Id*. In July of 2016, Dr. Arnold (Plaintiff's treating neurologist) noted that Plaintiff's medication levels had been low and that she had suffered five seizures at some unspecified time. *Id*. Dr. Orth testified that records from Antelope Valley Health Center ("AVHC") emergency department from November of 2016 noted that Plaintiff claimed she was compliant with prescribed medications and still suffering from seizures, but her bloodwork revealed less than therapeutic levels of Tegretol – an anti-convulsant medication. *Id*. In December of 2016, Plaintiff again presented to the AVHC because she felt she was going to have a seizure, and she had a seizure the day before.[3] *Id*. at 118-19. Dr. Orth also noted a report by consultative examining neurologist Farah M. Rana, M.D. that stated Plaintiff had suffered from a seizure the day before the examination but did not address medication compliance. *Id*. at 119.

Dr. Orth concluded that Plaintiff "has a valid disorder," but he did not have sufficient evidence to say whether the frequency of her seizures was due to "inadequacy of compliance with

---

[3] The record shows that Plaintiff had missed her medication because she had been attending to her boyfriend who was admitted to AVHC that day. *Id*. at 1080.

3

the medication." *Id*. The ALJ asked Dr. Orth to opine whether Plaintiff's seizure disorder met or medically equaled a listing, and Dr. Orth replied that he did not know based on the record evidence. *Id*. at 120. Finally, when the ALJ asked whether Plaintiff had any functional limitations due to her seizures, Dr. Orth cited the recent consultative examiner's report – Dr. Farah M. Rana – and testified that no opinion was rendered as to Plaintiff's functional limitations due to her seizures. *Id*. He added that the record shows that Plaintiff had some behavioral and cognitive issues and that he was uncertain whether those issues interfered with her medication compliance. *Id*. at 120-21. The ALJ then excused Dr. Orth from the remainder of the hearing. *Id*. at 121.

Then the ALJ asked Plaintiff about her living situation. *Id*. at 122. Plaintiff testified that she was currently living with her mother, but she had previously lived with her dad because living with her mother was stressful. *Id*. Plaintiff eventually moved back into her mother's house because she was having too many seizures since her father (a truck driver) and her sister (a mother of a newborn) could not focus on Plaintiff's care. *Id*. She stated that in the past three months she had made frequent visits to the emergency room due to her seizures, and that a couple of the most recent seizures caused her to stop breathing. *Id*. The ALJ asked if Plaintiff had been compliant with medication recently, and Plaintiff stated that she had. *Id*. at 123. Plaintiff stated that her neurologist, Dr. Arnold, changed her medications because "the medication that he gave [her] was not working out," and she added that the previous medication "caused [her] to have more [seizures.]" *Id*. Plaintiff added that, despite the change to her medication, she suffered from seizures more than twice a week. *Id*. at 124-25.

The ALJ then asked Plaintiff if anyone helped to ensure that she took the appropriate amount of medicine at the appropriate time and, if so, how long that "arrangement" had been in place. *AR* at 124. Plaintiff testified that she relies on her mother and sister to remind her to take her medication as prescribed and that sometimes they forget or get busy with other life events and Plaintiff is left to her own devices. *Id*. Next, the ALJ asked if Plaintiff had ever held a job, and Plaintiff stated that she tried to join a job training program through school, but she was removed from the program because she had too many seizures. *Id*.

//

4

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that they have the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *AR* at 41-54. At Step One, the claimant bears the burden of showing they have not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* at 44.

At Step Two, the claimant bears the burden of showing that they have a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: a partial and grand mal seizure disorder; borderline intellectual functioning; and a learning disorder. *AR* at 44.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing their impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's RFC and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that

1  met or medically equaled the severity of any of the listed impairments. *AR* at 44-46. Next, the ALJ

2  determined that Plaintiff retained the RFC to perform a full range of work at all exertion levels but

3  involving only simple and routine tasks, and that only require her to make simple work-related

4  decisions and to only occasionally require her to appropriately interact with coworkers and the

5  public. *Id*. at 46.

6  At Step Four, the ALJ determined that Plaintiff had no past relevant work. *Id*. at 53. Lastly,

7  at Step Five, the ALJ concluded that, based on the RFC, Plaintiff's age, education, and work

8  experience, and after consulting with a VE, there are jobs that exist in significant numbers in

9  which Plaintiff can still perform, such as housekeeping cleaner and marker. *Id*. at 53-54.

10 Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the

11 Social Security Act, from September 27, 2013, through the date of the issuance of the ALJ's

12 decision, March 9, 2018. *Id*. at 54.

## DISCUSSION

14 Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to

15 reject her symptom testimony when he stated that the alleged symptoms "were not entirely

16 consistent with the medical evidence and other evidence in the record . . . ." *See* Pl.'s Mot. (dkt.

17 22) at 5, 8. Plaintiff advances three arguments why the ALJ's reason for rejecting her testimony

18 was not legally sufficient. *Id*. at 8-11. First, the ALJ summarized the entire medical record and

19 corresponding medical opinions rather than specifically identify what testimony the ALJ found not

20 credible and what specific evidence undermined that testimony. *Id*. at 9. Second, a lack of

21 supporting objective evidence, on its own, is not a legally insufficient reason to reject Plaintiff's

22 symptom testimony. *Id*. Specifically, the lack of evidence of medication compliance is insufficient

23 to reject Plaintiff's testimony for three reasons: 1) failure to take her medication "has not been

24 shown to account for her memory problems, difficulty interacting with others, or fatigue;" 2) Dr.

25 Orth testified that he could not state with certainty the impact of noncompliance on frequency of

26 seizures and Dr. Dallafior noted that Plaintiff had a seizure immediately following the

27 administration of medication; and 3) without medical evidence showing that medication

28 compliance reduces the frequency of Plaintiff's seizures, it is mere speculation that medication

6

compliance would render her able to work, and speculation is not evidence. *Id*. at 10-11. Finally, Plaintiff argues that the ALJ did not explicitly state that the instances of inconsistent medication use were the reason for finding Plaintiff's symptom testimony not credible. *Id*.

Defendant reiterates the ALJ's reason for rejecting Plaintiff's symptom testimony and asserts that it is legally sufficient. *See* Def.'s Mot. (dkt. 23) at 3-4. Defendant counters that while lack of objective medical evidence, alone, is not sufficient to reject a claimant's subjective claims, an ALJ may consider other evidence such as "steps a claimant takes to alleviate an impairment" or "inconsistencies with Plaintiff's claims" to reject or accept symptom testimony. *Id*. at 4-5 Then, Defendant emphasizes that the record contains several instances of noncompliance. *Id*. at 5. Defendant also argues that Plaintiff is an inaccurate historian and that doctors have made notations to that effect, and thus, the ALJ was justified in considering inconsistencies between Plaintiff's testimony and the record of noncompliance. *Id*. at 6. Specifically, Defendant states that the ALJ appropriately rejected Plaintiff's testimony that she had been compliant with medications, and instead, gave weight to the opinions of Drs. Orth, Arnold, and Plaintiff's mother who all made remarks that Plaintiff was not consistent with medications. *Id*. at 7. Defendant also points to the opinions of Tracy L. Spitz, M.S., and Steven Brawer, Ph.D. (who performed psychological evaluations of Plaintiff in May and December of 2013, respectively), for the proposition that Plaintiff is less than forthright about her commitment to the prescribed treatment.[4] *Id*. 7-8. Finally, Defendant argues that some records tend to show that Plaintiff's seizures were responsive to medication, and social security regulation 20 C.F.R. § 416.930 provides that impairments that improve with a prescribed treatment are generally not disabling; thus, the ALJ's decision to reject Plaintiff's testimony was justified. *Id*. at 8. Defendant also cites a note by a school nurse from an Individualized Education Program ("IEP") meeting in September of 2014, notes by clinicians at

---

[4] Dr. Spitz, a school psychologist, noted that Plaintiff displayed work-avoidance behaviors and that some portion of a school test was rendered void based on Plaintiff's lack of effort or noncompliance. Def.'s Mot. (dkt. 23) at 7 (citing *AR* at 728). Dr. Brawer, a consultative examining psychologist, noted that Plaintiff was a sub-optimal historian, but Defendant omits the note above that stated Plaintiff was compliant in performing tasks and put forth adequate effort. Def.'s Mot. (dkt. 23) at 7-8 (citing *AR* at 571). These two instances indicate that Plaintiff struggles with focus and memory rather than malingering as Defendant seems to suggest.

San Leandro hospital from a July 2015 emergency room visit, and a note by Dr. Arnold in July of 2016 to show that Plaintiff's seizures improved with medication.[5] *Id*. While admitting that the lack of record evidence about the impact that medication compliance has on Plaintiff's seizures "makes it difficult to conclusively determine whether her condition is treatable and well under control," Defendant proceeds to conclusively state that there is just enough evidence to "suggest[] that with compliance, her condition is treatable and well under control." *Id*.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)). A summary of the medical evidence does not satisfy the clear and convincing standard; rather, the ALJ must identify which testimony is not credible and explain which evidence contradicts the testimony. *See Brown-Hunter v. Colvin*, 798 F.3d 749, 757 (9th Cir. 2015).

In cases where "the ALJ finds that claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the [reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing

---

[5] These records, however, do not clearly state how long Plaintiff was seizure free except for Dr. Arnold's note which states "since increasing [medication], she has not had any seizures . . . [since] perhaps . . . 10 days ago." *AR* at 980.

8

*Bunnell*, 947 F.2d at 345-46). The following may be considered in assessing a claimant's credibility: (1) the person's reputation for truthfulness; (2) inconsistences in either their own testimony or between their testimony and conduct; (3) daily activities; (4) work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff satisfied step one of the analysis, but he found that her testimony about the intensity, persistence, and limiting effects of her seizures was not consistent with the medical record and other record evidence. *AR* at 47. At step two of the analysis, the ALJ did not explicitly state which of Plaintiff's statements he found not credible; instead, the ALJ summarized the medical evidence with an emphasis on instances of medication noncompliance as documented by medical providers or evidenced by diagnostic bloodwork that showed Plaintiff's anti-seizure medicine was below therapeutic levels. *Id*. at 48-51. The ALJ noted that many visits out of "approximately fourteen hospital or emergency room visits because of seizure activity" showed medication levels in a less than therapeutic range. *Id*. at 48. Among the ALJ's recitation of the medical evidence, there are also instances where Plaintiff suffered from seizures despite medication compliance. *Id*. at 48-49, 745. Specifically, the ALJ cited to Dr. Mitchell's note from May of 2014 that Plaintiff suffered from weekly seizures despite bloodwork showing that her medication levels were in therapeutic range. *Id*. at 48, 745. Also, in June of 2016, Plaintiff presented to the San Leandro hospital's emergency department for seizures, and despite an administration of anti-convulsant medication, Plaintiff suffered additional seizures in the hospital leading Dr. Dallafior to conclude that Plaintiff's "seizures often times do not have anything to do with her medication . . . ."[6] *Id*. at 994. The ALJ also weighed the opinions of Plaintiff's mother and various doctors in the record and assigned more weight to the opinions of those who either found that Plaintiff was not compliant with her prescribed treatment or did not contradict the evidence of noncompliance. *Id*. at 51-52.

The ALJ's reason for rejecting Plaintiff's testimony about the intensity, persistence, and

---

[6] The ALJ gave Dr. Dallafior's opinion little weight because he saw Plaintiff one time, he does not appear to be a neurologist, and his opinion is inconsistent with the opinions of other doctors. *AR* at 51.

limiting effects of her seizures is neither specific, nor clear and convincing. First, as stated above, the ALJ only states that he rejects the testimony because it is not consistent with the overall record and then launches into a summary of almost all of the record evidence. *AR* at 47. The court assumes that the ALJ means that he rejects Plaintiff's testimony about her compliance with medication. Any assumption by this court of the ALJ's reason or conclusion shows that the ALJ failed to satisfy the legal standard for rejecting Plaintiff's testimony. However, the court is not blind to the Appeals Council's mandate on remand and the ALJ's focus on instances of medication noncompliance evidenced by blood test results. Even if the reason had been explicitly stated, it still fails to meet the clear and convincing standard.

The ALJ's reason for rejecting Plaintiff's testimony is legally insufficient because there is clear medical evidence that Plaintiff suffers from seizures despite medication compliance. *See id*. at 608, 580, 646, 734, 745. The applicable social security regulation provides that "if treatment prescribed by a physician *can restore your ability to work*, but you do not follow the prescribed treatment without a *good* reason, we will not find you disabled." *Id*. at 28 (citing 20 C.F.R § 416.930 and Social Security Ruling 82-59) (emphasis added). First, the record does not paint a clear picture whether the medication "can restore [Plaintiff's] ability to work" because there is evidence that she suffered from seizures once or twice a week when taking her medication as prescribed. *Id*. at 734, 745, 646. By Defendant's own admission, the record contains three instances of medication compliance supported by diagnostic blood tests that showed therapeutic levels of medication – December of 2013 (*id*. at 608), January of 2014 (*id*. at 580), and May of 2014 (*id*. at 745). Also, in April of 2014, Dr. Mitchell (one of Plaintiff's treating neurologists) noted that despite medication compliance, Plaintiff still suffered from seizures once or twice a week. *Id*. at 734. Thus, the record is not clear that if Plaintiff complied with prescribed treatment, she would not suffer from seizures or at least have fewer seizures, and thus, "restore her ability to work." In short, there are blood test results reflecting medication levels within the therapeutic range and below the therapeutic range, and Plaintiff suffers from seizures all the same.

Second, the ALJ did not inquire as to why Plaintiff did not consistently take her medication. As stated above, the relevant regulation contemplates the validity of a claimant's

1    reason for their failure to adhere to prescribed treatment. *See* 20 C.F.R. §416.930 (stating a

2    claimant will not be found disabled if they "do not follow the prescribed treatment without a *good*

3    *reason* . . . .") (emphasis added). The ALJ asked Plaintiff if anyone helped to ensure that she took

4    the appropriate amount of medicine at the appropriate time and, if so, how long that

5    "arrangement" had been going on. *AR* at 124. Plaintiff testified that she relies on her mother and

6    sister to remind her to take her medication as prescribed and that sometimes they forget or get

7    busy with other life events and Plaintiff is left to her own devices. *Id*. Additionally, the ALJ found

8    that Plaintiff had a severe borderline intellectual functioning impairment and severe learning

9    disorder. *Id*. at 44. Plaintiff also testified that her previously prescribed medications caused an

10   increase in the frequency of her seizures. *Id*. at 123. The ALJ, however, did not ask a single

11   question about why Plaintiff struggled with medication compliance. It has "long [been] recognized

12   that the ALJ is not a mere umpire, but has an independent duty to fully develop the record[.]"

13   *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992, as amended Sept. 17, 1992) (*per curiam*);

14   *see also Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial

15   rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both

16   for and against granting benefits[.]"). The ALJ did not fulfill this duty.

17          Finally, the ALJ and Defendant place a great deal of significance on a note by Dr. Arnold

18   from July of 2016. In the note, Dr. Arnold stated that Plaintiff is "an inaccurate historian" because

19   she could not remember the specific dates that she was hospitalized for seizures, but then Dr.

20   Arnold relies on Plaintiff's account that her medicine increased and she had not suffered from

21   seizures for up to ten days, which both the ALJ and Defendant hold up as great evidence that

22   Plaintiff is much improved when compliant with medication. *Id*. at 980. To argue on the one hand

23   that Plaintiff's testimony cannot be trusted because she is an inaccurate historian, but, on the other

24   hand, place great significance on a doctor's note based entirely on Plaintiff's "testimony" is

25   bewildering. Additionally, Dr. Orth testified that there was insufficient medical evidence to

26   determine whether Plaintiff met or medically equaled a listing. *Id*. at 120. The only evidence Dr.

27   Orth cited that showed Plaintiff experienced a two-month period without seizures was based on

28   Dr. Arnold's July 2016 note (i.e. Plaintiff's "unreliable testimony"). *Id*. at 119-20. Ultimately, Dr.

Orth concluded that there was insufficient evidence to conclude whether the frequency of Plaintiff's seizures was due to her medication noncompliance or not, and thus, he could not determine whether Plaintiff met or medically equaled an impairment listing. *Id*. at 120.

The ALJ has not only the power, but the duty, to "conduct an appropriate inquiry" if the evidence is ambiguous or inadequate to permit a proper evaluation of a claimant's impairments. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ may be required to re-contact the medical source, including a treating physician, to determine if additional needed information is readily available. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1); *see also Webb*, 433 F.3d at 687 ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). The responsibility to fulfill this duty belongs entirely to the ALJ; it is not part of the claimant's burden. *See e.g., White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("This duty extends to the represented as well as to the unrepresented claimant . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry . . . including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.").

Here, it cannot be reasonably said that the ALJ discharged the "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 110-11. In light of the above, because the court finds that further administrative proceedings would serve a useful purpose, the court orders this matter be remanded for further development of the record, particularly to evaluate whether medication compliance is likely to resolve Plaintiff's seizures, and to conduct an appropriate inquiry into why Plaintiff struggles with medication compliance.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (dkt. 22) is

**GRANTED**, and Defendant's motion for summary judgment (dkt. 23) is **DENIED**. The case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: August 17, 2020

ROBERT M. ILLMAN
United States Magistrate Judge